IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW TAYLOR | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| v. | : | |
| | : | 21-cv-01110-RAL |
| | : | |
| CURRAN FROMHOLD CORRECTIONAL | : | |
| FACILITY, et al., | : | |
| Defendant. | : | |

**RICHARD A. LLORET**                                      **December 6, 2022**
**U.S. Magistrate Judge**

## OPINION

Andrew Taylor ("Plaintiff" or "Mr. Taylor" or "Taylor") has brought suit against Curran-Fromhold Correctional Facility ("CFCF")[1] for one count of negligence under Pennsylvania's Political Subdivision Tort Claims Act,[2] and one count of deprivation of civil rights under 42 U.S.C. § 1983. Before me is CFCF's Motion for Summary Judgment, filed pursuant to Federal Rule of Civil Procedure 56 (Doc. No. 24)[3] and Mr. Taylor's Response (Doc. No. 25). I grant in part and deny in part summary judgment based on the discussion below.

### FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed this lawsuit in the Philadelphia County Court of Common Pleas in January 2021. Doc. No. 1, at 2. Plaintiff brings one count alleging negligent, reckless, and outrageous conduct for Defendants' failure to provide Mr. Taylor with proper

---

[1] Plaintiff also names the City of Philadelphia ("the City"), the Philadelphia Prison System ("PPS"), and the Department of Corrections of the City of Philadelphia ("the DOC") as defendants in this litigation (collectively "Defendants").

[2] *See* 42 Pa. C.S.A. § 8542(b)(3).

[3] All references to the electronically docketed record will be cited as "Doc. No. ____ at ____."

sleeping accommodations due to medical restrictions, Doc. No. 1, at 14-16, and one count alleging Defendants violated Mr. Taylor's civil rights, pursuant to 42 U.S.C. § 1983, by imposing cruel and unusual punishment in violation of the Eighth Amendment,[4] *id.* at 16-18. Defendants removed this case to the Eastern District of Pennsylvania, which has federal question jurisdiction over the Constitutional claim. Doc. No. 1.

Plaintiff alleges that, while incarcerated at CFCF for a non-violent offense, medical personnel hired by Defendants found him to be a fall risk due to a seizure disorder and required him to be placed in sleeping accommodations of low height ("bottom bunk status" or "lower bunk status") to guard against injury should he suffer an involuntary fall. Doc. No. 1, at 12. Nevertheless, after a disciplinary move to the "administrative segregation and/or disciplinary segregation" unit in February 2019, Plaintiff was assigned to A1 pod 2, cell 29, bed 2.[5] Doc. No. 24-13. Plaintiff's newly assigned cell contained bunk beds affixed to the wall, with one directly over the other.[6]

---

[4] The Eighth Amendment is applicable to the states through the Fourteenth Amendment's due process clause. *See, e.g., Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).
[5] There is no evidence in the record that indicates which bunk is bed one and which is bed two. The Plaintiff's expert report makes an assertion about which bunk is which, but an expert opinion cannot be treated as undisputed fact during summary judgment review. *See, e.g., Fiorentini v. William Penn Sch. Dist.*, 150 F. Supp. 3d 559 (E.D. Pa. 2016).
[6] Doc. Nos. 24-20 and 24-21 are two photographs of the cell Mr. Taylor was assigned in A1 pod 2. The images show that both bunks were affixed to the wall via bolts and a metal box was affixed to the floor near the foot of the two bunks to be used as a step up to the top bunk. *See e.g.*, Doc. No. 24-21 (affixed).

Mr. Taylor alerted his cell mate that he was bottom-bunk status, but his cellmate claimed he also was on bottom bunk status. Doc. No. 24-7 ("Taylor Deposition"), at 20:10-19; 21:24-22:12. The cellmate had been arrested for a violent offense, and so Plaintiff was unwilling to confront him. Doc. No. 1, at 13. Plaintiff claims to have alerted multiple prison employees about his lower bunk status both during his transition between housing units and after being assigned to cell 29. Taylor Deposition, at 34:15-24; 35:5-13; 35:19-36:2; 36:15-20. Mr. Taylor states that his complaints were ignored. *Id*. After approximately one week in the new cell, Plaintiff fell from the top bunk while sleeping and suffered injuries due to head trauma caused by his impact with the concrete floor. Taylor Deposition 34:17-23:6.



The PDP has a policy for "Special Needs Inmates" that outlines the following procedure for "Bottom Bunk Accommodations." Doc. No. 24-17 ("Policy No. 5.E.10"), at 6. This policy is as follows:

> Inmates who are unable to adequately enter into and descend from the top bunk will be assigned to a bottom bunk. The medical care provider will identify those patients who require a bottom bunk, including those with a known history of a seizure disorder or for any other appropriate medical reason. Patient preference is not considered sufficient reason to assign a bottom bunk.
>
> The medical care provider will determine that the inmate requires a bottom bunk. The medical care provider will document the information in the progress note and write an appropriate medical order for the bottom bunk. The medical order will contain the duration of the bottom bunk status. If there is to be no expiration date, the information must be written in the medical order sheet.
>
> The medical care provider will notify the Shift Commander of the need for the patient to have a bottom bunk. The Shift Commander will be given the patient's name, PIO#, start and completion date for the bottom bunk. The medical care provider will document in the progress note the time and date of the entry and the Shift Commander's name.
>
> The Shift Commander will be responsible for alerting the housing officer and Center Control and for ensuring the bottom bunk information is entered into the UMS housing desktop.

*Id.*

The parties deposed several employees of Defendant: Deputy Warden Patricia Powers ("Powers"), former Corrections Officer Terrence Mollineau ("Mollineau"), and Corrections Officer Douglas Broome ("Broome").

Patricia Powers is employed as a deputy warden for PPS, she oversees the "policy and audit division" and is responsible for "keeping up on the reviews of our policies." Doc. No. 24-8 ("Powers Deposition"), at 10:22-11:2; 11:15-12:15. Ms. Powers explained that lower bunk determinations are made by medical personnel, that the lower bunk determination is important and expected to be followed, and that the determination must be communicated through the prison via a card given to the inmate or through the

inmate's page on the jail management portal ("Lock & Track"). Powers Deposition, at 28:6-9; 33:1-7; 33:11-19; 34:17-35:24.

Counsel deposed former correctional officer, Terrence Mollineau, who was assigned to A1 pod 2 during the time Mr. Taylor was housed there. *See* Doc. No. 24-10 ("Mollineau Deposition"). Mr. Mollineau testified that he was unaware of a policy for cross-referencing Lock & Track to ensure bottom-bunk inmates were assigned accordingly. *Id*. at 20:18-21:7. When asked about procedure during inmate bed assignment, Mr. Mollineau testified that while the correctional officers "can go in the computer and look [bunk status] up", the inmate is responsible to communicate bunk limitations. *Id*. at 18:8-20. Additionally, while a correctional officer can confirm the information via Lock & Track, "it's kind of a courtesy, it's more medical staff['s responsibility] to issue [the inmate] a card." *Id*. Mr. Mollineau testified that if the inmate does not communicate the medical need, either verbally or with the issued card, CFCF personnel likely would be unaware of the inmate's lower-bunk status. *Id*. at 21:23-22:5. When specifically discussing Mr. Taylor, Mr. Mollineau speculated that Mr. Taylor could have told other members of staff and those employees brushed his bottom bunk status "under the rug." Mollineau Deposition, at 35:5-21. Mr. Mollineau testified there have been other instances where bottom-bunk inmates were placed in top bunks and, that when such improper placement occurs, the inmates would put their mattress on the floor rather than sleeping in the top bunk. *Id*. at 36:3–6.

Counsel also deposed Corrections Officer Douglas Broome. Doc. No. 24-11 ("Broome Deposition"). In his deposition, Mr. Broome testified that when he would process and individual during intake, he would not review the inmates' Lock & Track information. *Id*. at 14:8–19. Correctional Officer Broome testified he was unaware of any

employee who would look at the Lock & Track system when receiving a new inmate. *Id.* at 14:8—19; 17:4—17. Further, like Mr. Mollineau, Corrections Officer Broome followed a procedure that the inmate was responsible for alerting them of his lower bunk status either through a card or verbal notice. *Id.* at 19:3—15.

Defendants filed a motion arguing four grounds for summary judgment.: (1) that the City is the only viable defendant; (2) Plaintiff cannot pursue § 1983 relief under the Fifth Amendment; (3) as to Count I, Plaintiff's use of the real property exception to general municipal immunity is nonapplicable as a matter of law; and (4) as to Count II, Plaintiff failed to establish there was an unconstitutional policy or custom that caused the fall. *See* Doc. No. 24. Plaintiff responds that a genuine issue of material fact is present both as to Count I and II. Doc. No. 25. Plaintiff does not address whether the City is the only proper defendant or if Mr. Taylor can pursue relief for an alleged Fifth Amendment violation. *Id.*

## LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" issue occurs only if a sufficient evidentiary basis exists for a jury to find for the respondent. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A "material" factual dispute occurs only if the weight of the facts may affect the action's outcome. *Id.* A "material factual dispute" cannot be merely "speculation or conjecture." *Modaffare v. Owens-Brockway Glass Container, Inc.*, 643 F.Supp.2d 697, 700 (E.D. Pa. 2009).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat

summary judgment, the non-moving party must indicate a genuine issue to be resolved at trial by identifying specific facts contained in the record. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 323-24. When the non-moving party carries the burden of proof at trial, as Plaintiff does here, the non-moving party must produce specific evidence in discovery or in affidavits,[7] and cannot rely solely on the pleadings. *Celotex*, 477 U.S. at 324.

The reviewing court may rely only on admissible evidence. *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 94-95 (3d Cir. 1999). All inferences must be viewed in the light most favorable to the non-moving party. *See e.g.*, *United States v. Diebold, Inc.*, 369 U.S. 654 (1962); *see Pastore v. Bell Tel. Co. of Pennsylvania*, 24 F.3d 508, 512 (3d Cir. 1994) (citing *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992)).

## DISCUSSION

I will dispose of Defendant's arguments in the order in which they are raised. *See* Doc. No. 24, at 4-11. Plaintiff does not address who may be a named defendant or the Fifth Amendment issue; Plaintiff responds that there is a genuine issue of material fact as to both Count I and II. *See* Doc. No. 25, at 4-14.

### I.    Plaintiff's Claims Against PPS, CFCF, and The DOC Fail as A Matter of Law under § 16257.

Defendant argues that PPS and CFCF cannot be separately named entities in the § 1983 claim, pursuant to 53 Pa. C.S.A. § 16257. Defendant argues that the DOC cannot be a named entity, as Philadelphia does not have a department with that name, and, even if this entity did exist, it would not be subject to legal action separate from the city

---

[7] Parties may refer to "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to provide support for or against summary judgment. Fed. R. Civ. P. 56(c).

itself due to § 16257's limitations. Plaintiff does not respond to this ground for summary judgment, thereby conceding. However, I will briefly address this ground for relief.

Under § 16257, when an individual files suit for alleged misconduct by a department of the City of Philadelphia, the individual shall name the City as the sole defendant, not the department that performed the alleged misconduct. 53 Pa. C.S.A. § 16257. Section 16257 has been followed by the Eastern District of Pennsylvania and dismissals pursuant to § 16257 have been upheld by the Third Circuit. In *Thompson v. Philadelphia Prison System*, the Eastern District dismissed PPS from a § 1983 claim. 2021 WL 1550341 (E.D. Pa. 2021) (Pratter, J.) (citing *Jackson v. City of Erie Police Dep't*, 570 F. App'x 112, 114 (3d Cir. 2014)). In *Russel v. City of Philadelphia*, the Third Circuit upheld the district court's summary judgment dismissing PPS and the Philadelphia Industrial Correction Center[8] as improper defendants. 428 Fed.Appx. 174, 177 (3d Cir. 2011). The Third Circuit also upheld a decision to remove a county's prison from a lawsuit when reviewing a motion to dismiss under § 16257. *See Lenhart v. Pennsylvania*, 528 Fed.Appx. 111, 114 (3d. Cir. 2013). I grant Defendant's motion and shall dismiss CFCF and PPS with prejudice, pursuant to 53 Pa. C.S.A. § 16257.

Finally, the City of Philadelphia does not have a department named the Department of Corrections of Philadelphia. *See* City Government Directory, the City of Philadelphia, https://www.phila.gov/city-government-directory/#/ (last visited Nov. 18, 2022). Plaintiff has conceded the point by ignoring it. Therefore, I grant summary judgment on this ground and shall dismiss the Department of Corrections of the City of Philadelphia from the case with prejudice.

---

[8] The Philadelphia Industrial Correction Center is one of the three prisons that house inmates from the City of Philadelphia, CFCF is one of the remaining two. *See* Powers Deposition 13:8-16.

The City of Philadelphia shall remain as a named defendant, and all allegations in the complaint shall be treated as raised against the city itself.

## II.   Plaintiff Has Not Developed A § 1983 Claim Based on a Fifth Amendment Claim in Any of The Filings.

Defendant argues that Plaintiff should not be able to pursue § 1983 relief under the Fifth Amendment, because the Fifth Amendment applies only to federal actors. Doc. No. 24-1 at 5. Plaintiff's counsel does not respond to this ground. However, Plaintiff makes clear that he is pursuing a "§ 1983 claim, based on violations of [Taylor's] Eighth Amendment Constitutional rights. . .". Doc. No. 25, at 6. In the filings, Plaintiff has not developed a Fifth Amendment claim, only the Eighth Amendment claim. Doc. No. 1, at ¶¶ 26-27.

Defense counsel is correct that Plaintiff cannot recover under the Fifth Amendment against municipal actors. *See Huffaker v. Bucks County District Attorney's Office*, 758 F. Supp. 287, 290 (E.D. Pa. 1991); *and see Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983). However, the filings indicate Plaintiff's theory is not a Fifth Amendment violation, but an Eighth Amendment Violation, made applicable to state actors through the Fourteenth Amendment's due process clause. *See* Doc. No. 1, at ¶¶ 26-35 (the complaint); *and see* Doc. No. 25, at 6-14 (the Answer to Defendants' Motion for Summary Judgment). I will enter an Order striking any reference to the Fifth Amendment in Plaintiff's pleadings and otherwise denying Defendants' motion as moot.

### III.    Count I Shall Be Dismissed with Prejudice, As the Real Property Exception to Governmental Immunity Is Not Applicable as a Matter of Law.

Defense's third argument is that the Pennsylvania Political Subdivision Tort Claims Act bars the Pennsylvania negligence claim as a matter of law, because the real property exception is inapplicable.[9] Plaintiff responds that the real property exception does apply by pointing to evidence in discovery that indicates the real property (the upper bunk affixed to the wall) became unsafe while in Defendant's "care, custody, and control" due to defendant's negligence (assigning a bottom-bunk-only individual to a top bunk) and damages to the Plaintiff resulted (Mr. Taylor was severely injured when involuntarily rolled off the bed). *See* Doc. No. 25, at 6. Plaintiff argues that the real property exception applies as a matter of law, or, at minimum, the question should be left to the jury to determine. *Id.* I find that the real property exception does not apply as a matter of law.

Under Pennsylvania law, municipalities have general immunity from tort liability for "any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S.A. § 8541.[10] The statute provides limited exceptions to the general rule. *See* 42 Pa. C.S.A. § 8542(a)-(b). For an exception to apply and liability to be imposed, the plaintiff must show that (1) "damages would be recoverable" if the tortfeasor was not protected by governmental immunity, (2) "the injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his offices or duties," and (3) the act falls into one of nine listed acts,

---

[9] Under 42 Pa. C.S.A. §§ 8541-8564.

[10] General immunity and sovereign immunity in Pennsylvania are governed by different statutes in Pennsylvania. However, "[t]he Sovereign Immunity Act and the Tort Claims Act are to be interpreted consistently." *Lockwood v. City of Pittsburg*, 751 A.2d 1136, 1140 (Pa. 2000).

one of which is the real property exception.[11] *Id*. Pennsylvania law has held "the question of whether a defendant's negligence caused the plaintiff's injury is a question of fact". *Brewington v. City of Philadelphia*, 199 A.3d 348 (Pa. 2018) ("*Brewington II*") (citing *Taylor v. Northeast Bradford School District*, 101 A.3d 144, 150 (Pa. Commw. Ct. 2014); *Mellon v. City of Pittsburgh Zoo*, 760 A.2d 921, 925 (Pa. Commw Ct. 2000)). The court may review whether the real property exception applies as a matter of law. *Id*. I will review whether the real property exception applies.

Exceptions to general immunity are to be "narrowly interpreted, given the express legislative intent to insulate political subdivisions from tort liability." *Snyder v. Harmon*, 562 A.2d 307, 312 (Pa. 1989) (citing *Mascaro v. Youth Study Center*, 523 A.2d 1118 (Pa. 1987)). The real property exception applies when "[t]he care, custody or control of real property in the possession of the local agency" causes damages. § 8542(b)(3). To recover under the real property exception, Pennsylvania courts have required a Plaintiff to "'show that (a) the injury resulted from a dangerous condition that (b) stemmed from the care, custody[,] or control of real property, not [personalty].'" *Brewington v. City of Philadelphia*, 149 A.3d 901, 905 (Pa. Commw. Ct. 2016) ("*Brewington I*") (quoting *Northeast Bradford School District*, 101 A.3d at 148; citing *Mellon*, 760 A.2d at 924.). The municipality's negligence must cause the "the real property itself [to be] unsafe for activities for which it is used." *Snyder*, 562 A.2d at 312 (citing *Vince by Vince v. Ringgold School District*, 499 A.2d 1148 (Pa. 1987)); *see also Vann v. Board of Education of the School District of Philadelphia*, 76 Pa. Commw. Ct. 604 (1983).

---

[11] The nine acts are: vehicle liability; care, custody, or control of personal property; real property; trees, traffic controls, and street lighting; utility service facilities; streets; sidewalks; care, custody, and control of animals; and sexual abuse. 42 Pa. C.S.A. § 8542(b)(1)-(9).

The real property exception "can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes injury. . .". *Id*. (citing *Mascaro*, 523 A.2d) (emphasis added). In other words, this exception functions under the premises liability theory of torts, not harm caused by individuals. *Hagwood v. City of Philadelphia*, --- F.Supp.3d ---, 2022 WL 1654810, *3 (J. Robreno) (E.D. Pa. 2022) (citing to *Mascaro*, 523 A.2d at 1123-24). *Mascaro* explains that the real property exception's standard of liability imposes a duty "to maintain the property safely for the activities for which it is regularly used, for which it is intended to be used, or for which it may reasonably be for[e]seen to be used." 523 A.2d at 1123-24. Further, "the conduct or negligent act complained of must be directly related to the condition of the property." *Id*.

The parties cite to Eastern District of Pennsylvania cases (Doc. No. 24, at 7) and Pennsylvania Commonwealth cases (Doc. No. 25, at 5-6). When reviewing a matter of Pennsylvania law in the Eastern District of Pennsylvania, the Pennsylvania Supreme Court's decisions are "conclusive." *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000). The federal court shall give "due regard" to opinions of Pennsylvania's intermediate appellate courts, as these opinions are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the [Pennsylvania Supreme Court] would decide otherwise." *Id*. (internal citations omitted).

Defendant cites to *Hagwood*, which held that the defective property itself must cause the injury and the property cannot function as an avenue for a third party to harm the victim. 2022 WL 1654810, at *3. In *Hagwood*, Plaintiff was suing under § 8541(b)(3)'s exception for an incident that occurred while he was working inside the Philadelphia Juvenile Justice Services Center ("PJJSC"). *Id*. at *1-*2. Plaintiff was

employed by a third party and was providing maintenance services to the building. *Id*. at *1-*2. Plaintiff believed a locked door protected him from wandering juvenile detainees; unknown to him, the door's locking mechanism was defective. *Id*. Juveniles improperly wandering the halls were able to gain access and attacked the Plaintiff. *Id*. Upon Defendant's motion for summary judgment, the Court found that § 8541(b)(3) was inapplicable, because Plaintiff alleged that the property's defect allowed third-party actors to harm the Plaintiff. *Id*. at *3. The court determined that for the real property exception to be applicable, the defective property itself must cause the harm, rather than merely be an avenue of harm by a third party. *Id*.

Plaintiff cites to *Brewington I*,[12] which held that the real property exception applied. There, a school was conducting relay races during P.E. inside a gymnasium that had concrete walls, but did not provide any mats or padding on the wall to prevent or minimize injury. *Id*. at 903. The Plaintiff, a 9-year-old student, was running too fast, couldn't stop, lost his footing, and tripped and fell into the concrete wall. *Id*. The trial court dismissed the claim, finding that the injury was caused by personalty, not real property; the Commonwealth court reversed. *Id*. at 905, 911. The Commonwealth Court found that "the design and layout of the gym and the construction of its walls were. . . unsafe for its intended and regular use as a gymnasium; the unprotected cement wall posed a danger to students who used it regularly for gym class; and that dangerous condition was the cause of Student's injury." *Id*. at 910 (internal citations omitted).

The Pennsylvania Supreme Court affirmed this decision, finding that "the lack of padding of a gym wall may constitute negligence in the care, custody, and control of real

_____

[12] I note, as Plaintiff did in their motion, that *Brewington* was affirmed by the Pennsylvania Supreme Court via a published opinion. As Pennsylvania Supreme Court law is the guiding principle in this matter, I review *Brewington v. City of Philadelphia*, 199 A.3d 348 (Pa. 2018) ("*Brewington II*") in more detail.

property, and, thus, falls within the Act's real property exception." *Brewington II*, 199 A.3d at 350. It holds that "the real property exception, by its express definitional terms, includes a failure to provide safety features in situations where such a duty otherwise exists," and that "the unpadded *wall* directly caused [the plaintiff's] injuries, and that the wall constitutes real property." *Id.* at 357.

Plaintiff also cites to *Gump by Gump v. Chartiers-Houston School District*, 558 A.2d. 589 (Pa. Cmmnw. Ct. 1989), which held that the real property exception applied. In *Gump*, a school wrestling team was conducting running drills in a hallway of the high school. *Id.* at 590. A student failed to turn and accidentally pushed his hand through a window of a school door and cut his hand. *Id.* The Commonwealth Court held that there was a genuine issue of material fact because there was a dispute regarding if the window was defective as a result of regular use for wrestling activities. *Id.* at 603-04.

Here, the gist of Mr. Taylor's theory of liability is not that the bunk beds were defectively constructed or maintained, but that the prison assigned him to the wrong bed: a top bunk. Mr. Taylor was assigned to A1 pod 2, cell 29, bed 2.  Doc. No. 24-13. In cell 29, there was an upper bunk affixed to the wall via bolts with no rails along the edge of the bed. See Doc. No. 24-21. While sleeping on the upper bunk, Mr. Taylor rolled off the bed and landed on the concrete floor, resulting in head injuries and a trip to the emergency room. Taylor Deposition 34:17-23:6. Plaintiff asserts that Defendant negligently put Mr. Taylor in a top bunk, even though it was unsafe to do so due to Mr. Taylor's bottom bunk status, and that the negligent act caused Mr. Taylor's fall. Doc. No. 25, at 6.

Unlike *Brewington I* and *Gump*, the condition of the bunk would have been the same, had Defendants taken the action urged by Mr. Taylor: assigning him to the top

bunk. *See* Doc. No. 24-21. The negligent act, if one occurred, did not affect the "care, custody, or control" of the property; it concerned the care, custody, and control of Mr. Taylor, an inmate. *Gump* questions if the window was properly maintained; *Brewington* questions if the wall was properly padded. In this case, as in *Hagwood*, the condition of the property was no more than an avenue – one physical happenstance among several - through which the negligence of the prison in failing to assign Mr. Taylor to the lower bunk found consequence in Mr. Taylor's fall onto a concrete floor. "Because the allegations against the City here have nothing to do with the condition of the property itself, but are focused upon the City's procedures for [assigning bunks for inmates], no claim has been stated under the Act." *Win & Son, Inc. v. City of Philadelphia*, 162 F.Supp.3d 449, 466 (E.D. Pa. 2016) (McHugh, J.).

I will grant summary judgment dismissing Count I.

## IV. A genuine issue of material fact exists whether CFCF engaged in a pattern of behavior that resulted in an unconstitutional custom that proximately caused Mr. Taylor's injuries.

Defendants argue that Plaintiff failed to show that CFCF implemented an unconstitutional policy or custom pursuant to *Monell*, and Plaintiff failed to demonstrate that policy or custom was the proximate cause for Mr. Taylor's injuries. *See* Doc. No. 24, at 8-11. Plaintiff responds that a *Monell* claim can be brought through an informally adopted custom and evidence that indicates the City committed an Eighth Amendment violation via CFCF's deliberate indifference to ensuring that Mr. Taylor was placed in the proper bunk. *See* Doc. No. 25, at 7-14. After review of the exhibits presented by counsel, I find that there is a genuine issue of material fact that should be left for the jury.

Incarceration "'is a form of punishment subject to scrutiny under the Eighth Amendment standards.'" *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981) (quoting *Hutto v. Finney*, 437 U.S. 678, 685 (1978)). Claims "involving failure to assign a proper bunk to accommodate an inmate's medical needs" fall under "the Eighth Amendment's prohibition on cruel and unusual punishment," and may be actionable under § 1983. *Cameron v. Swartz*, No. 17-cv-816, 2020 WL 7496317, at *5 (W.D. Pa. Nov. 19, 2020) (*citing Glazewski v. Corzine*, 385 F. App'x 83, 89 (3d Cir. 2010)).

Section 1983 claims require showing that the municipality, or a municipal employee acting in their official capacity, acted "pursuant to official municipal policy" or custom that "caused a constitutional tort." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978); *see also Fletcher v. O'Donnel*, 867 F.2d 791, 793 (3d Cir. 1989) ("A city may be held liable for an official policy or a custom which proximately causes a constitutional deprivation"). A municipality cannot be held liable under a theory of *respondeat superior. Id.* at 691.

Municipal policy forms when the employee or employees "responsible for establishing final policy" make "a deliberate choice to follow a course of action." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). A single action can constitute a policy only when the action is made "by a governmental agency's highest policy maker," but not when a "lower-level employee act[s] under color of law." *Fletcher*, 867 F.2d at 793. A custom forms when "the relevant practice is so widespread as to have the force of law," *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997), and "can be established by proof of knowledge and acquiescence." *Fletcher*, 867 F.2d at 793 (citing *Pembaur*, 475 U.S. at 48-82 n. 10). A lower-level employee's single act cannot

16

create custom, but, once a custom is shown through other means, a lower-level employee's single act can create liability. *Id.*

Accordingly, a prisoner alleging inadequate attention to his medical needs in violation of the Eighth Amendment must show "deliberate indifference" to "serious" medical needs by a prison official to succeed on the claim. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence," and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *see also Bryan County*, 520 U.S. at 407 (deliberate indifference occurs when Plaintiff shows employees' "conscious disregard for the consequences of their action") (internal cites omitted)).

"[O]n a claim that an inmate's conditions of confinement violated the Eighth Amendment, the inmate must meet two requirements: (1) the deprivation alleged must be, objectively, 'sufficiently serious,' and (2) the 'prison official must have a sufficiently culpable state of mind.'" *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834). Accordingly, "[t]o be liable on a deliberate indifference claim, a defendant prison official must both 'know[ ] of and disregard[ ] an excessive risk to inmate health or safety.'" *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (quoting *Farmer*, 511 U.S. at 837). "[S]ubjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Id.* "[A] defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of

the risk, he took reasonable steps to prevent the harm from occurring." *Id.* When the named defendant is an institutional defendant, to succeed in a § 1983 claim, the plaintiff must show that the institution was deliberately indifferent by a showing that *some* of the institution's employees were "deliberately indifferent and the deliberate indifference can be attributed to [the institution]." *Parkell v. Danberg*, 833 F.3d 313, 338 (3d Cir. 2016).

Plaintiff must show there is indeed a genuine issue to be resolved at trial by identifying specific facts contained in the record. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 323-24.

I will analyze the *Monell* claim first, and then the Eighth Amendment Claim.

A.   *Plaintiff Has Established a Genuine Issue of Material Fact Whether There Was a Custom in Place of Not Training Employees to Ensure Proper Placement of Lower-Bunk Inmates.*

In its motion, Defendant argues there is no affirmative policy or custom that led to a constitutional violation. Defendant proposes that Plaintiff must produce "scienter-like evidence" demonstrating the policy or custom's existence. Doc. No. 24, at 9-10 (quoting *Beswick v. City of Philadelphia*, 185 F. Supp. 2d 418, 427 (E.D. Pa. 2001)). Defendant submits that Plaintiff must show there was an intent or knowledge of wrongdoing by Blanch Carne, Commissioner of the PDP and the policymaker in question, and that the record contains no such evidence, nor is there evidence of an unconstitutional policy put in place by Ms. Carne. Doc. No. 24, at 9-10. Defendant argues there is no evidence in the record of any formal complaint by Mr. Taylor. *Id.* at 10. Defendant argues there is no "evidence of [a] *widespread* pattern or practice of staff members violating inmates' constitutionally protected rights" in this matter "or of a conscious decision or deliberate indifference of the Commissioner to medical orders for inmates." *Id.*

18

Plaintiff responds that there is evidence of a custom at CFCF to fail to appropriately train or supervise its employees in responding to and managing lower bunk assignments. Plaintiff supports this proposition with reference to *Johnson v. City of Philadelphia*:

> If the alleged policy or custom at issue is a failure to train or supervise (as it is here), the plaintiff must show that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." [*Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014)]. (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "Ordinarily," this requires a plaintiff to identify a "'pattern of similar constitutional violations by untrained employees'" that "puts municipal decisionmakers on notice that a new program is necessary ...." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011)). Otherwise, the plaintiff needs to show that failure to provide the identified training would "likely ... result in the violation of constitutional rights"—i.e., to show that "the need for more or different training [was] so obvious." *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

975 F.3d 394, 403 (3d Cir. 2020). Additionally, requisite notice is "generally established by a pattern of prior constitutional violations." *Peters v. Cmty. Educ. Centers, Inc.*, No. 11-CV-850, 2014 WL 981557, at *4 (E.D. Pa. Mar. 13, 2014) (citing *Beck v. City of Pittsburgh*, 89 F.3d 966, 975 (3d Cir.1996)).

Defendant has a policy regarding bottom bunk protocol, Policy 5.E.10, "Special Needs Inmates," which directly outlines the policy correctional employees are to follow once an inmate's bed status is deemed lower bunk only. Policy No. 5.E.10, at 6. Plaintiff highlights the importance of this policy through Deputy Warden Powers' deposition. Powers, an agent who reviews PPS' policies, agrees that "medical needs. . . are always important" and "need to be at the forefront". Powers Deposition, at 28:6-9. She testifies that the policy applies when medical personnel determine "the individual needs a lower bunk" due to a medical limitation, such as "seizure disorders" or "physical limitations on being able to climb up . . ." *Id.* at 33:1-7. The determination "means if the individual has

a lower bunk designation, then security staff needs to be placing the inmate in the lower bunk or assigning them to a lower bunk" and she agrees that this is "an accommodation [that] the facility is then expected to make for that inmate no matter where they are in the facility[.]" *Id.* at 33:11-19. Once an inmate is designated lower bunk only, medical personnel should then update an inmate's alert page in the jail management system ("Lock & Track"), this alert is available to all security personnel. *Id.* at 34:17-35:24.

Plaintiff submits that, although agents of the policy maker acknowledge this policy and its importance, the record demonstrates a lack of training and enforcement of this policy. Doc. No. 25, at 12-13. First, medical staff failed to provide a new medical card to Mr. Taylor when he was unable to access his previously issued card. Instead, he was told that the correctional officers would be able to confirm his lower-bunk status through the alert system, Lock & Track. Taylor Deposition, at 21:2—14. Mr. Taylor testified he repeatedly told correctional officers of his lower bunk status and was ignored. *Id.* at 34:15-24; 35:5-13; 35:19-36:2; 36:15-20.

Two Correctional Officers, who together have a combined 41 years of experience as prison guards within Philadelphia's Department of Prisons (*see* Doc. No. 25, at 13), indicated that they both worked under a procedure that required the inmate to alert the corrections officers of any bed restrictions. Mr. Mollineau testified that "usually the inmates will tell you" their lower-bunk status and that the correctional officers "can go in the computer and look it up. But it's kind of a courtesy, it's more [on] medical staff to issue them a card." However, he acknowledges that "[i]f the officer wants – if [the inmate] lets the officer know, somebody lets the officer know, the officer can either call down to medical to, you know, affirm like, okay, yeah, this inmate has this condition or he can look it up in the computer . . ." Mollineau Deposition, at 18:8-20. Mr. Mollineau

testified that if the inmate does not communicate the medical need, either verbally or with the issued card, the correctional officer transferring the inmate likely would be unaware of the lower-bunk status. *Id*. at 21:23-22:5. Correctional Officer Broome, like Mr. Mollineau, followed the procedure that "[u]sually, when an inmate comes in, if he has a lower bunk status, he'll have a card with him from the nurse and they usually give that to us to indicate that they have a bottom bunk status. If he doesn't have that, then we'll have to call the nurse to find out if they actually have bottom bunk status." Broome Deposition, at 19:3 – 19:12. He then confirmed that the burden is "on the inmate to inform you whether they have bottom bunk status." *Id*. at 19:3 – 19:15.

Correctional Officer Broome testified that when he would take an individual through intake, he would not review the inmate's Lock & Track information; and he was not aware of any other employee who would look at the Lock & Track system when receiving a new inmate to their pod. Broome Deposition, at 14:8–19; 17:4—17. Mr. Mollineau, similarly, testified that he was unaware of any policy in place for ensuring inmates were placed in bottom-bunks due to medical bottom-bunk status by cross-referencing Lock & Track. Mollineau Deposition, at 20:18-21:7. Mr. Mollineau further testified that he is aware of other instances where bottom-bunk inmates were placed in top bunks due to overcrowding and inmates would put their mattresses on the floor to avoid sleeping in the top bunk. Id. at 36:3 – 36:6.

A reasonable jury could determine that there was a "pattern of similar constitutional violations by untrained employees" sufficient to "put[] municipal decisionmakers on notice that a new program is necessary" or that the need for more training was obvious. *Johnson*, 975 F.3d at 403 (internal citations omitted).

> **B.** *There Is a Genuine Issue of Material Fact That CFCF's Conduct May Amount to a Violation of § 1983 Under the Eighth Amendment.*

A prisoner alleging a violation of the Eighth Amendment must show a prison official's "deliberate indifference" to the prisoner's "serious" medical needs. *Wilson*, 501 U.S. at 297 (citing *Estelle*, 429 U.S. at 106). Typically, a plaintiff can succeed by showing "(1) the deprivation alleged must be, objectively, 'sufficiently serious,' and (2) the 'prison official must have a sufficiently culpable state of mind.'" *Tice*, 948 F.3d at 138 (quoting *Farmer*, 511 U.S. at 834).

Defendant argues that there is no evidence of "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Doc. No. 24, at 11 (quoting *Harris*, 489 U.S. at 385). Specifically, there is no evidence that the policy or custom was the "moving force" behind the alleged misconduct, and that the Plaintiff did not show that the "longstanding unconstitutional custom or practice, caused the prison staff to deprive the plaintiff of his federally protected rights." *Id.* at 11 (citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989)).

Plaintiff points to evidence of the plaintiff asserting either his lower bunk status or that there was an assignment error multiple times during transition from general population and his placement in the new pod. Doc. No. 25, at 27; Taylor Deposition, at 34:15-24; 35:5-13; 35:19-36:2; 36:15-20. Additionally, Mr. Mollineau's and Mr. Broome's deposition testimony established that there was a widespread practice of not checking the Lock & Trace, a simple device for ascertaining bunk status that would have averted this accident. *See* Broome Deposition, at 14:8—19; 17:4—17; 19:3—15; *and see* Mollineau Deposition, at 18:8-20; 20:18-21:7; 21:23-22:5.

I find that Plaintiff has pointed to specific evidence that establishes a genuine issue of material fact.  A reasonable jury could find that the placement of a seizure-prone, lower bunk inmate in a top bunk violated Mr. Taylor's Eighth Amendment rights, that there is a custom in place to not properly train correctional officers on the lower-bunk policy, and that this lack of training was "a direct causal link" that led to placing Mr. Taylor in a top bunk, whence he fell all too foreseeably.

**CONCLUSION**

For the foregoing reasons, I grant in part and deny in part Defendant's motion for summary judgment. I grant Defendant's summary judgment motion on the basis that Curran-Fromhold Correctional Facility, Philadelphia Prison System, and the Department of Corrections of the City of Philadelphia are improperly named defendants in this matter. I grant Defendant's summary judgment motion regarding Plaintiff's Pennsylvania Negligence Claim (Count I) on the basis that the real property exception to governmental immunity is inapplicable in this matter. Both the improperly named defendants and Count I will be dismissed with prejudice in an accompanying order.

Plaintiff has not developed a Fifth Amendment theory in any of the pleadings. Plaintiff is clearly pursuing the § 1983 claim through a theory of an Eighth Amendment violation and shall be allowed to pursue that theory in front of a jury. I will strike any reference to the Fifth Amendment from the pleadings. I will deny Defendant's motion

requesting dismissal of Plaintiff's § 1983 claims, as I find that there is a genuine issue of material fact that should be left for the fact finder to decide.


                              **BY THE COURT:**


                              *s/ Richard A. Lloret*
                              **RICHARD A. LLORET**
                              **U.S. MAGISTRATE JUDGE**